## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MARIO QUESTELL RODRÍGUEZ and
his wife ÁNGELES GONZÁLEZ RUBIO,
each of them personally and on behalf
of their conjugal partnership and of their
minor daughters, S.N.Q.G. and S.I.Q.G.

      Plaintiffs,

      vs.

PRESBYTERIAN COMMUNITY
HOSPITAL, INC.; DR. JOSÉ R. DUEÑO
QUIÑONES and his wife MARY DOE,
each of them personally and on behalf of
their conjugal partnership; JOHN DOES
1, 2 and 3 personally and on behalf of
their respective conjugal partnerships;
A, B and C CORPORATIONS; UNKNOWN
INSURANCE COMPANIES A through E.

      Defendants.

CIVIL NO.: 10-

PLAINTIFFS DEMAND
TRIAL BY JURY

## COMPLAINT

**TO THE HONORABLE COURT:**

Plaintiffs, Mario Questell Rodríguez and his wife Ángeles González Rubio, each of them personally and on behalf of their conjugal partnership and of their minor daughters, S.N.Q.G. and S.I.Q.G., through their undersigned attorneys, respectfully state and pray as follows:

### Jurisdiction and Venue

1.     The events or omissions giving rise to the claims set forth in this action all occurred within the District of Puerto Rico and the Commonwealth of Puerto Rico.

2.     Federal jurisdiction in this case is attained under diversity pursuant to section 1332 of Title 28, United States Code. Venue is appropriate in this judicial district

pursuant to section 1391(b) of Title 28, United States Code.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

### Parties

4.      Plaintiffs Mario Questell Rodríguez ("Mr. Questell") and his wife Ángeles González Rubio ("Mrs. González"), together with their minor daughters S.N.Q.G. and S. I.Q.G. are citizens and residents of the state of Florida.

5.      Defendant Presbyterian Community Hospital, Inc. ("Presbyterian Hospital") is a corporation organized under the laws of the Commonwealth of Puerto Rico, which has its principal place of business in Puerto Rico. Presbyterian Hospital is the owner and/or operator of a hospital of the same name located in San Juan, Puerto Rico.

6.      Defendant Dr. José R. Dueño Quiñones ("Dr. Dueño") is a medical doctor and a citizen and resident of the Commonwealth of Puerto Rico, who, upon information and belief, is married to codefendant Mary Doe and with her constituting a conjugal partnership, who at all times relevant to this claim was employed by and/or had medical privileges at Presbyterian Hospital, practiced his profession at said hospital and provided medical treatment thereat to Mr. Questell.

7.      All of the other defendants are also citizens and residents of the Commonwealth of Puerto Rico or states other than Florida.  John Does 1, 2, and 3 and A, B and C Corporations are persons and/or corporations, whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed herein.

8.      Unknown Insurance Companies A through E, insurers whose identities are presently unknown, insured the aforementioned defendants and are jointly responsible

with their respective insureds for the damages claimed herein pursuant to section 2003 of Title 26 of the Annotated Laws of Puerto Rico.

## Factual Allegations

9.      On or about December 20th, 2007 Mr. Questell went to Presbyterian Hospital's emergency room seeking emergency medical attention due to an intense and constant abdominal pain, together with lower back pain, which had started a few days before.

10.     After the hospital's medical staff took the patient's personal data, history and vital signs, which showed he was a diabetic patient with a respiratory rate of 18 and a pulse of 115, Mr. Questell was examined by codefendant Dr. Dueño, who ordered laboratory tests and X-rays.

11.     Several hours later, after laboratory and X-rays tests were completed, including a gallbladder ultrasound, Dr. Dueño informed Mr. Questell that the test results were "normal" and that he merely had gastritis.

12.     Nevertheless, the report prepared by Dr. Tomás Jiménez Robinson, staff radiologist at the hospital, indicated that although Mr. Questell's gallbladder did not show up clearly in the ultrasound it appeared to be markedly contracted and suggested a nuclear scan of the gallbladder to determine if some pathology existed in that organ.

13.     Notwithstanding the aforesaid radiology report, Dr. Dueño discharged Mr. Questell with a diagnosis of muscular strain of the back with discogenic disease and a fatty liver. Dr. Dueño prescribed Lipochol NR, Ibuprophen and Norflex and ordered Mr. Questell to follow a soft diet. Mr. Questell's vital signs at discharge indicated an abnormal pulse of 115.

14.     Mr. Questell followed Dr. Dueño's medical orders and stayed at home resting. However, his abdominal and lower back pain continued with greater intensity.

15.     By December 22nd, 2007 Mr. Questell's abdominal and back pain were so severe that he could not sleep at all.

16.     On December 23rd, Mr. Questell and his wife went back to the Presbyterian Hospital's emergency room, where by chance Dr. Dueño was again on duty and attended to Mr. Questell for the second time in approximately three days.

17.     Mr. Questell informed Dr. Dueño that he was suffering intolerable pain and nausea. Dr. Dueño asked him why he had not followed his medical orders and Mr. Questell informed him that he had indeed followed his orders and the prescribed diet. Dr. Dueño then proceeded to order new laboratory tests, an I.V. serum and pain medications.

18.     Upon evaluating Mr. Questell's test results Dr. Dueño concluded that the patient was suffering gastroenteritis and that he should continue to observe the diet that he had prescribed originally.

19.     Noticing that Dr. Dueño was about to discharge her husband home, Mrs. González asked Dr. Dueño whether it was possible that the cause of Mr. Questell's pain could be something other than a gastroenteritis, since Mr. Questell had suffered gastroenteritis previously and the symptoms had not been similar to the ones he was now experiencing. Mrs. González added that her husband had a very high pain tolerance and in order for him to complain of intolerable pain, as he was at that time, something very serious had to be wrong with him.  She asked if something could have ruptured inside of her husband.

20.     Dr. Dueño responded by stating that "he was the captain of the ship" and that she and her husband should limit themselves to following his orders and going home.  Consequently, Mr. Questell and his wife returned to their home.

21.     On this second occasion Dr. Dueño's discharge orders included the same

special diet as before plus prescriptions for Protonix 40 mg daily for 10 days and Immodium AD as needed. This time the discharge diagnosis was acute gastroenteritis and the patient's vital signs showed an elevated pulse of 109.

22.     That evening of the 23rd of December, 2007 Mr. Questell's pain was so extreme that he resorted to lying in a bathtub filled with hot water, hoping for some relief. Mr. Questell again could not sleep at all that night due to the extreme abdominal and back pain.

23.     On December 24th, out of desperation Mr. Questell asked his wife to contact his friend Dr. Fernando Vega and tell him what was happening. Mrs. González placed a telephone call to Dr. Vega and read him the results of the various medical tests that had been performed on her husband.

24.     Dr. Vega suspected his friend had a serious gallbladder problem and instructed Mrs. González to take her husband immediately to the emergency room at Doctor's Hospital in Bayamón, where Dr. Vega had medical privileges and could monitor Mr. Questell's condition directly.

25.     At the time of his arrival at Doctor's Hospital's emergency room Mr. Questell could barely stand up or walk, and had to be taken in wheelchair to a hospital bed. He was initially examined by Dr. Ana Suárez who immediately ordered his admission in order to perform tests to determine the exact cause of Mr. Questell's unbearable pain.

26.     Soon after being admitted to Doctor's Hospital Mr. Questell started experiencing rectal bleeding.

27.     Following multiple diagnostic tests, the medical staff at Doctor's Hospital determined that indeed there was a problem with the patient's gallbladder and decided to perform emergency surgery. During surgery it was discovered that Mr. Questell's

gallbladder had ruptured. The organ, which was removed, was described as "a dry pear" and "rubbery".

28.    Mr. Questell suffered post surgical abdominal swelling and showed symptoms of an infection. Additional tests were performed which indicated that the patient was indeed suffering a severe small bowel infection.

29.    As a result of the small bowel infection, Mr. Questell had to be submitted to a second emergency surgical procedure, consisting of a small bowel resection where a large section of that organ was removed.

30.    Mr. Questell had an extremely difficult hospital course involving multiple procedures and complications, including two pulmonary emboli, an embolism in one leg and a three week stay in the intensive care unit.  Mr. Questell had a final diagnosis of cholecystitis, small bowel ischemia, peritonitis and bilateral pulmonary emboli.  He was discharged on February 5, 2008, approximately 43 days after admission.

31.    Due to the multiple complications suffered by Mr. Questell during his hospitalization, at the time of his discharge he had lost fifty pounds, was extremely weak, bent over, could not walk and his pulmonary capacity had been greatly diminished.  Mr. Questell also required blood thinning medication in order to prevent life threatening embolisms.

32.    Presently, Mr. Questell still requires blood thinning medication and has a greatly diminished lung capacity.  He suffers from back pain, blood in the urine and recently spent a week in the hospital due to thrombophlebitis caused by a minor bump on his leg, a condition that he never had before the incidents that give rise to this claim.

33.    Due to the "on-the-field" type of work required in Mr. Questell's building contractor business, he was ordered by his physician not to engage in such work related functions and not to even drive a vehicle, since the risk of even minor injuries

was great and the complications could be life threatening due to risks of emboli.

34.     Being self-employed and the key man of his own company Mr. Questell's inability to work has caused the loss of important contracts, clients and income which to date amount to no less than $200,000.00.  Mr. Questell depended on maintaining and developing existing and new building contracts in order to support his family.  He has gone from being the primary provider of his family to now being dependant on his wife.

35.     As a direct result of the economic distress caused by Mr. Questell's inability to work and loss of income, plaintiffs are in the process of filing for bankruptcy protection and have been forced to move from the residence they owned at the time of the aforesaid incidents since they could no longer afford to live there.

36.     Mr. Questell also suffers from depression as a result of the incidents indicated above, which have rendered him physically and emotionally dependent. Plaintiff is insecure about his prospects for life and health and his ability to work and contribute to his family's well being.

37.     As a result of defendants' negligence, Mr. Questell unnecessarily endured severe physical and emotional pain and suffering which was entirely avoidable given the symptoms he exhibited and the established medical standards, protocols and means available to defendants.

38.     Mr. Questell's predicament has resulted in great emotional and economic damages to all plaintiffs whose family, social and psychological life has been severely altered, all due to defendants' negligence.

39.     Due to defendants' negligence Mr. Questell's gallbladder ruptured and he had to undergo emergency surgery twice, suffering a number of medical complications during a month and a half hospitalization which put his life at grave risk.  Said surgeries, both of which were avoidable had it not been for defendants' negligence, caused

Mr. Questell intense physical and emotional pain and disfiguring permanent scars on his body, which affect his self esteem and are a daily reminder of his near death experience.   Mr. Questell has been unable to recover his physical and emotional condition to a degree that would allow him to resume work and avoid the financial distress that unemployment entails. Additionally, Mr. Questell is now required to indefinitely take multiple medications and has been forced to seek psychiatric treatment in order to confront the depression he has been suffering due to his traumatic experience and physical incapacity.

40.     Plaintiffs' damages were caused by the negligence of Presbyterian Community Hospital, Inc. and its medical personnel, including codefendant Dr. José R. Dueño Quiñones, all of whom departed from the medical standards of care and otherwise failed to act in a prudent, reasonable or responsible manner in the medical treatment provided to Mr. Questell.

41.     More specifically, defendants' departures from the medical standards and/or professional negligence include, but are not limited to: failure to take an adequate medical history and perform an adequate physical exam; failure to recognize the significance of an abnormal abdominal gallbladder ultrasound; failure to order a nuclear scan of the gallbladder as recommended by the radiologist; failure to perform a repeat assessment on Mr. Questell; failure to properly diagnose and treat Mr. Questell's gallbladder disease; failure to timely prescribe antibiotics; failure to recognize the markedly increased adverse outcome of gallbladder disease in a diabetic patient; failure to obtain a surgical consult; failure to recognize and address the fact that Mr. Questell was being discharged with abnormal vital signs; failure to retake Mr. Questell's vital signs; and failure to timely admit Mr. Questell to the hospital.

42.     Mr. Questell's physical and emotional damages, including his past,

present and future physical and mental pain, anguish and suffering, caused by the defendants' negligence are valued in a sum not less than $3,000,000.

43.   Plaintiffs Ángeles González Rubio and her daughters S.N.Q.G. and S.I.Q.G., have individually suffered and will continue to suffer grave emotional damages and mental anguish due to the unnecessary pain and suffering and premature incapacity of their husband and father, respectively. Said damages are valued in a sum not less than $1,000,000 for Mrs. González and $500,000 for each of her daughters.

44.   The conjugal partnership constituted by Mr. Questell and his wife, Mrs. González, is suffering and will continue to suffer substantial economic damages due to Mr. Questell's inability to work, which in turn results in loss of income, clients and contracts, all of which is a consequence of defendants' negligence. Said economic damages are reasonably estimated in an amount in excess of $250,000.00.

45.   Codefendants and their respective insurance companies are jointly and severally liable for the negligence and damages described in this complaint.

46.   The statute of limitations for this action was timely interrupted by the filing of a judicial claim that was subsequently voluntarily dismissed without prejudice.

### COUNT I

### (Medical Malpractice, Vicarious Liability - 31 L.P.R.A. § 5141; 5142)

47.   Paragraphs 1 through 46 of this Complaint are incorporated by reference as if fully set forth herein.

48.   Defendants Presbyterian Community Hospital, Inc., Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A through C, had a duty to provide medical care to Mr. Questell that complied with the applicable standards of the medical profession. Notwithstanding, Presbyterian Community Hospital, Inc., Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A through

C, breached that duty as set forth above.

49.     Presbyterian Community Hospital, Inc. is further vicariously liable for the negligent acts and/or omissions incurred by the other defendants herein and by its medical and nursing staff that intervened with Mr. Questell, as well as for its negligence in the selection, monitoring, supervision and granting of privileges to said doctors and nurses, including codefendant Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A through C.

50.     There is a clear and direct causal link between the medical malpractice and/or negligence of Presbyterian Community Hospital, Inc., Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A through C and the damages sustained by plaintiffs, as set forth above.

## COUNT II

### (Direct Action Against Insurers - 26 L.P.R.A. § 2003)

51.     Paragraphs 1 through 50 of this Complaint are incorporated by reference as if fully set forth herein.

52.     Defendants Unknown Insurance Companies A through E have a contractual obligation to compensate those who are damaged by the medical errors and omissions of defendants Presbyterian Community Hospital, Inc., Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A through C.  As set forth in Count I, above, these defendants committed medical malpractice and/or negligence with respect to Mr. Questell.  Moreover, there is a clear and direct causal link between their misconduct and the damages sustained by plaintiffs, as set forth above.

53.     Under 26 L.P.R.A. § 2003, plaintiffs have a right to reclaim directly against the corresponding insurers of defendants Presbyterian Community Hospital, Inc., Dr. José R. Dueño Quiñones, John Doe Defendants 1, 2 and 3 and Corporations A

through C.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs respectfully request that the Court enter final judgment against defendants:

1.    Declaring defendants to be in violation of 32 L.P.R.A. § 5141, 5142 and 26 L.P.R.A. § 2003, as alleged hereinabove.

2.    Finding defendants jointly and severally liable to plaintiffs for the economic and non-economic damages sustained by plaintiffs, in an amount not less than $5,250,000 plus applicable interest and costs.

3.    Awarding plaintiffs such other and further relief at law or in equity as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues triable of right by a jury in the complaint set forth above.

In San Juan, Puerto Rico, this 12th day of February, 2010.

**RESPECTFULLY SUBMITTED.**

> **LAW OFFICES DAVID EFRON, PSC**
> *Attorneys for Plaintiffs*
> PO Box 29314
> San Juan, PR 00929-0314
> Tel.: (787) 753-6455
> Fax: (787) 758-5515
> efron@davidefronlaw.com
>
> By:    _DEfron_
> DAVID EFRON
> USDC-PR 125701