IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIO QUESTELL-RODRIGUEZ, his wife
ANGELES GONZALEZ-RUBIO and their
minor daughters SNQG and SIQG

Plaintiffs

vs

PRESBYTERIAN COMMUNITY
HOSPITAL, INC.; DR. JOSE R.
DUEÑO-QUIÑONES, his wife MAY DOE,
each of them personally and on behalf of
their conjugal partnership; JOHN
DOES 1, 2, 3, personally and on behalf of
their respective conjugal partnerships; A, B
AND C CORPORATIONS; UNKNOWN
INSURANCE COMPANIES A THROUGH E

Defendants

CIVIL 10-1115CCC

**OPINION AND ORDER**

        An evidentiary hearing was held in this case on December 6, 2010, during which the

Court first heard the testimony of attorney Antonio Moreda, a partner in the Moreda and

Moreda Law Firm, followed by that of plaintiffs Mr. and Mrs. Mario A. Questell.  The Court

has considered the following documents submitted in support of and in opposition to the

Motion to Dismiss  **(docket entry 11)**, based on res judicata, to wit: the two authorizations

signed by Mario A. Questell-Rodríguez, dated February 5, 2008, for attorney Antonio

Moreda or any other attorney from the Moreda and Moreda Law Firm to obtain his medical

files at Ashford Presbyterian Hospital and at Doctors' Center Hospital. (Docket entries 23-1,

24-1); the two complaints filed on behalf of the Questells before the Commonwealth of

Puerto Rico's Court of First Instance, San Juan Part, on December 5, 2008 in

Cv. KDP2008-1572 by the David Efron Law Firm (the Efron Complaint) (docket entry 11-2)

and on December 18, 2008 in Cv. No. KDP08-1643 by Manuel A. Moreda[1] of the Moreda

_____

[1]The English translation incorrectly identifies attorney Manuel Moreda as "Miguel".

CIVIL 10-1115CCC                                        2

and Moreda Law Firm (the Moreda Complaint) (docket entry 11-5); the Notice of Voluntary Dismissal without prejudice signed by attorney Hatuey Infante of the Efron Law Firm filed on May 28, 2009 (docket entry 11-3) in Cv. KDP 2008-1572, and the corresponding Judgment and Notice of Judgment under Rule 39.1(a) of the Puerto Rico Rules of Civil Procedure entered June 15 and June 17, 2009, respectively, (docket entry 11-4); the Notice of Voluntary Dismissal without Prejudice filed on July 14, 2009 and the Judgment entered on July 22, 2009 pursuant to that same Rule and the Notice of Judgment entered on July 28, 2009 in Cv. KDP08-1643 signed by Manuel Moreda of the Moreda and Moreda Law Firm; the Professional Services Agreement between the Questells and the Law Office of David Efron signed on September 8, 2008 (docket entry 13-2); the Request for Information dated May 19, 2008 for the complete medical file of Mario A. Questell during his December, 2007 emergency room treatment at Presbyterian Hospital signed by his wife Angeles Gonzalez (docket entry 24-1); Discharge Note from Doctors' Center Hospital dated February 5, 2008 at 6:00 p.m. (Docket entry 34-1). Additionally, and primarily, the Court has assessed the credibility of witnesses, plaintiff Mario A. Questell and attorney Antonio Moreda, during the evidentiary hearing. Its findings on the issue of the existence of an attorney-client relationship are based on its determination that Questell's testimony is deserving of full credibility.

How does a person find himself as a plaintiff in two separate malpractice lawsuits, based on the same event, against the same defendant, filed by different attorneys 13 days apart, both "voluntarily" dismissed without prejudice, the first of which was refiled as a malpractice action in federal court, where defendant seeks dismissal invoking Rule 39.1(a)(2) of the Puerto Rico Rules of Civil Procedure of 1979[2], which provides that a notice of dismissal without prejudice operates as an adjudication upon the merits when filed

_____

[2]The new Rules of Civil Procedure of Puerto Rico of 2009, effective July 1, 2010, are inapplicable.

CIVIL 10-1115CCC                                 3

by a plaintiff who has once dismissed an action in the courts of Puerto Rico or of the United States or of any state based on or including the same claim?  The answer as to Mario A. Questell is clear: He never authorized attorney Moreda or anyone else from the Moreda and Moreda Law Firm to file the second malpractice case in the Commonwealth Court, Cv. KDP08-1673, on his behalf.[3]

Whether the same day that Questell was discharged from the hospital after a 43 -day stay  or the day after, February 5 or February 6, 2008 respectively, he and his wife visited the Moreda and Moreda Law Office which had, in the past, represented his brother Mario **R**. Questell-Rodríguez and his corporation MRQ Maintenance and Service Corp. Plaintiff Mario **A**. Questell-Rodríguez had been involved as a witness and in the preparation of a case in which the corporation was a party. The Court gives full credence to Questell's testimony that he only visited the Moreda and Moreda Law Firm on one occasion. However, even if, as claimed by attorney Moreda, there was a September, 2008 meeting, this does not alter the fact that their discussion was limited to a specific purpose: obtaining and thereafter reviewing Questell's hospital records to explore whether he had a possible malpractice claim. Moreda, by his own admission, represented at such meeting that he would retain a medical expert to evaluate the case and give an opinion. Questell affirmed during the evidentiary hearing that the only thing that he and Moreda talked about at his office was to get the records.  Referring to his conversation with Moreda in February 2008, Questell  testified: "He said, well, we have to get the records from the hospital to see what we can do to see if you have a case. And that's it. That's the only thing we talk about it." Tr. p. 94, l. 17-19.  On his part, Moreda stated that the purpose of such meeting was to obtain the records authorization "for the same to be evaluated by a medical doctor of my selection to ascertain that what appeared to be an obvious case of a malpractice was in fact

---

[3]Reference to Mario A. Questell, the principal malpractice plaintiff, also includes his spouse.

CIVIL 10-1115CCC                                    4

so." Tr. p. 32, l. 8-11.  Regarding the last meeting in September, 2008, which Questell

disclaims, Moreda stated:

> **The Court**: So when is the next time you see Mr. Mario Questell
> again?
>
> **The Witness**: September, 2008.
>
> **The Court**: And what is the purpose of that?
>
> **The Witness**: At that time I had made a reasonable brief
> summary of the major highlights of the hospital records.  Tr. 43,
> l. 22 to 44, l. 1-2.

Questell provided two written authorizations for Moreda to obtain his hospital records

at defendant hospital and at Doctors' Center Hospital, both dated February 5, 2008. Moreda

gave the written authorizations to a paralegal services company to obtain the same. He

acknowledged that these were not obtained until late May or early June, 2008, more than

three months after Questell's February office visit. Questell had inquired at the law firm

during that period regarding the status of the medical records. Having been informed that

the law firm had not received them, on May 17, 2008 his spouse submitted a written request

for his full medical file at Presbyterian Hospital. The remaining medical records were also

obtained by them and provided to the Law Office of David Efron, which represents them in

this case and previously did so in the first medical malpractice action in the Commonwealth

court.

The Questells met several times with attorney Hatuey Infante before executing a

written professional services agreement on September 8, 2008 with the Efron Law Firm. The

Questells' contractual commitment to pay contingency fees to the Efron Law Firm flattens

Moreda's "impression," based on his subjective view, that Questell had retained him. This

"impression" was described by Moreda as follows: "I was under the impression all the time

that I had been retained as an attorney, that the work done through that period of time was

more of an advice, consultation and review of facts before proceeding to determine if I

CIVIL 10-1115CCC                              5

believed or not that I had a probably good case, malpractice hospital – malpractice case."
Tr. p. 81, l. 14-19.

Upon inquiry by the Court: "I ask you if you ever talked beyond the mere evaluation of medical records and said, 'All right, now we go to the filing stage,'" attorney Moreda answered: "No, I don't recall talking with Questell in those terms." Tr. p. 85, l. 20-21.[4]  This exchange followed:

> **The Court**: Were your conversations only around the records?
>
> **The Witness**: And the summary I had made of them, and how I like the sequence of facts and events, that I wanted to have a

---

[4]We give no weight, due to clear inconsistencies, to attorney Moreda's testimony that he advised Questell that he had to file a "schematic complaint" before the year 2008 ended. Examined on this subject by the Court, he stated:

**The Witness**: Then I was advised by Mr. Questell that he was planning on moving to the States for further medical attention, and that was late November, mid November, 2008, he was going to leave shortly thereafter to the State of Florida for that purpose. At that time I recall telling him that I had to file a schematic lawsuit in order to interrupt the statutory period of one year he had to file suit for his damages.

**The Court**: Could you repeat what you said you told Mr. Questell, where he advised you in mid or late November, 2008 that he was leaving shortly thereafter for Florida; what is it that you told him?

**The Witness**: He told me he was moving to Florida for further medical attention.

**The Court**: What did you tell him?

**The Witness**: At that time I told him that I had to file what I called a schematic complaint in order to interrupt the one-year statutory period which would end by on or about December 18, 2008. Tr. p. 47, l. 1-19.

But, see:

1. Tr. p. 69, l. 19-22, where Moreda states, " that he does not even recall discussing with Questell that he was moving to Florida";

2. Tr. p. 75, l. 15-19, where, Moreda refers to **September, 2008,** not November**,** as the date when he advised Questell about interrupting the one year limitations period; and

3. Tr. p. 78, l. 8-13, where Moreda states that he "could not recall talking to Questell, seeking him, calling him, or any conversation with him between late September, 2008 and mid December, 2008 about filing a complaint in December ."

CIVIL 10-1115CCC                                    6

> complete up-to-date medical records of the suffering and damages he had sustained, mainly the renal and the heart condition, and that I believed that it was important for me to provide the record to an expert that will give me at least a preliminary advice or review.
>
> Beyond that, I don't recall ever telling him, now I proceed to the next stage of filing," or words to that effect, no, I do not recall saying so.

Tr. p. 85, l. 22 through 86, l. 8.

It is clear to the Court that, even assuming that the September, 2008 meeting occurred, Moreda was still at that time in a record gathering phase, had not requested a medical evaluation nor discussed with Questell the probabilities of success, much less the actual filing of a lawsuit. By September 2008, the Questells, tired of waiting for Moreda to do the evaluation promised since February 2008, moved on.

On September 8, 2008, the Questells signed a clear-cut legal services contract and retained the Efron Law Firm to file the malpractice lawsuit in the Puerto Rico Court of First Instance, San Juan Part. They took it upon themselves to obtain the medical records after a three-month wait in which the Moreda firm had failed to acquire them. Once in their possession, they took them to the only law firm to which they entrusted their legal representation. Unbeknownst to the Questells, after Mr. Efron filed on their behalf the malpractice action against both defendant hospital and the emergency room doctor on December 5, 2008, in Cv. KDP2008-1572, the Moreda and Moreda Law Firm, without any authorization filed a complaint on the same claim, only against the defendant hospital on December 18, 2008 in Cv. No. KDP08-1643 signed by Mr. Manuel A. Moreda, senior partner, who had never interviewed or met the Questells. In like manner, senior partner Manuel A. Moreda, without the knowledge or consent of the Questells, signed and filed a Notice of Dismissal, Without Prejudice on behalf of the Questells on June 6, 2009. Both the filing of the complaint and the notice of dismissal were unilateral actions taken by the Moreda Law Firm without the knowledge or consent of the Questells.

CIVIL 10-1115CCC                              7

        Given the lack of authorization and consent, the Moredas' actions cannot bind the
Questells. It follows that the unauthorized complaint in Cv. No. KDP-08-1643 cannot serve
as a basis for the res judicata defense. The notice of its dismissal of that unauthorized action
does not have the effect of an adjudication on the merits because the Questells neither
authorized the filing of the complaint of December 18, 2008 nor the notice of dismissal.
Rather, both were submitted to the Commonwealth Court in San Juan by the Moreda Law
Firm  in Cv. No. KDP-08-1643, without authority to do so. Moreda was not acting as the
attorney or the agent of the Questells because a contract which established an
attorney-client relationship that would allow Moreda to act as the Questells' agent or
authorized representative before such court was nonexistent.  One cannot penalize a litigant
under Rule 39.1(a)(2) of the Civil Procedure of Puerto Rico of 1979 for the filing and
dismissal of a second cause of action by an attorney who acted without authority to do so.
There was only one complaint the filing of which was authorized by the Questells in the
Commonwealth Court in Cv. No. KDP2008-1572 and whose voluntary dismissal was
authorized after the Questells relocated to the mainland. There was no procedural rule that
barred them from refiling it and from invoking the diversity jurisdiction of this Court.

        The relationship between an attorney and a client is consensual. A legal services
agreement is governed by the law of contracts. In addition to the guiding principles of
contracts, the relationship between an attorney and a client evolves in the context of ethical
rules which cannot be ignored by the attorney. Since the attorney acts as an agent for the
client, the lawyer's actions must always be authorized by the client in order for him to act on
the latter's behalf. Having considered all of the relevant actions and the conduct of the
Questells and attorney Moreda, the Court determines that the February 2008 consultation,
made for the limited purpose of evaluating the medical records and possibility of success
of a malpractice claim, did not develop into an attorney-client relationship. The Questells
authorized the Moreda and Moreda Law Firm to obtain his hospital records for review and

CIVIL 10-1115CCC                                    8

screening by a medical consultant who would give his opinion on the possibilities of a successful malpractice claim. The Questells' authorization did not go beyond this. Attorney Moreda's actions never reached the point of the medical review, since he never got beyond the record gathering stage.

        In sum, there was no contract between the Moreda Law Firm and the Questells that established an attorney-client relationship by virtue of which they authorized the firm to file a judicial complaint as their legal representative. The unauthorized filing by such law firm is not remedied as movants suggest by Questell's pursuing a legal malpractice claim against that firm. A legal malpractice action presumes that there was an attorney-client services contract that was breached by negligent performance. Since the Questells never agreed that the Moreda Law Firm represent them in court in a medical malpractice suit, that is not a viable alternative. Nor is there any circumstance that could justify this Court to dismiss this case on a res judicata defense that has no foundation.

        For the reasons stated, Presbyterian Community Hospital's Motion to Dismiss **(docket entry 11)**, which was joined by Dr. José R. Dueño-Quiñones, is DENIED.

        SO ORDERED.

        At San Juan, Puerto Rico, on July 11, 2011.


                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge